ASHLEY *v.* KINNAN.

*(Supreme Court, Special Term, New York County.* October 30, 1888.)

1. CORPORATIONS—OFFICERS—COMPENSATION—FIXING SALARY—OFFICER TAKING PART IN MEETING.

Where an officer of a corporation whose duties do not require the exercise of any special knowledge, ability, or attention presides at a meeting of the trustees in which a resolution voting him a salary is passed, though he testifies that he did not vote, and it is not recorded that he did, no dissent appearing, the resolution is invalid.

2. SAME—QUANTUM MERUIT.

The only testimony that the services were of any value being that of the officer himself, he cannot be held to be entitled to the salary on the *quantum meruit.*

Action by George B. Ashley, receiver of the Castner Carbon Company, against Alexander P. W. Kinnan, a former director and officer of the corporation.

---

[1] An insolvent debtor may transfer property to a creditor to pay a debt justly due, and such transfer is not void as to other creditors. Bank v. Riddell, *ante*, 331. See, as to when conveyance by debtors will be held fraudulent, Burhans v. Kelly, *ante*, 175, and note; Neal v. Foster, 36 Fed. Rep. 29, and note; Johnson v. Phillips, *ante*, 432.

*Charles Bland*, for plaintiff.　*E. J. Meyers*, for defendant.

PATTERSON, J.　The plaintiff is the receiver of the Castner Carbon Company, appointed in proceedings for the dissolution of that company, which was a corporation organized under the general manufacturing law of New York, and was dissolved by judicial decree in December, 1885.　The defendant, during the existence of the corporation, was a director and officer thereof, and the receiver now seeks a recovery against him on two causes of action: (1) For certain moneys which the defendant received as salary as such officer; and (2) for damages for alleged waste of the funds, and improvident management of the affairs of the corporation by the defendant and those associated with him; the liability being claimed to be several as well as joint, of those who are responsible in such cases.

It is unnecessary to consider the case on the second cause of action, for it must be and is virtually conceded that the evidence fails to establish any such willful neglect or fraudulent conduct or gross maladministration, on the part of the defendant, of the financial or other business of the corporation, as would render him liable, except in so far as he may have been a party to the granting and payment of salaries to the secretary and general manager.　As to that there seems to have been no impropriety in the employment of a secretary and general manager, and I am not prepared to say on the whole evidence that their services were not valuable and beneficial to the company, and, indeed, I consider as matter of fact that theirs were the only services of officers of such a character as to justify compensation.　The general manager was necessarily employed in the oversight of the construction of the works, and as he was the inventor of the process to be used by the company, he was the proper person for the position.　The nature of the services of a secretary of such a corporation is well understood, and in the case of this company he not only kept the minutes and records, but was also the book-keeper and treasurer.　Whether or not in a suit brought against them their respective contracts, based upon the resolution fixing their salaries, would be maintained in view of the fact that they voted at the trustees' meeting for such resolution, is not the question arising in this second cause of action against the defendant.　The gist of that cause of action is waste of the corporate moneys by the defendant, and it was not waste to pay for such services as those officers were employed to render.

But, as to the first cause of action, I think the plaintiff is entitled to recover the amounts Kinnan drew as salary as vice-president prior to Mr. Ostrander's death, and as president when he succeeded that gentleman in the presidency of the company, and until the resolution of the trustees went into effect by which the payment of salaries was stopped, on the 31st of July, 1884. I do not place this decision precisely on the grounds urged by the plaintiff, for I am of the opinion that the trustees had the power under the by-laws to provide salaries for officers, and that such by-laws were operative.　The trustees, who met together, and fixed the salaries, were for the first year those named in the certificate of incorporation, and were for the second year duly elected, and the by-laws, if irregularly adopted at first, were subsequently recognized and regarded as being those under which the affairs of the company were conducted.　But the amounts the defendant was to be paid as salary were fixed, and the contracts between the corporation and himself to pay the compensation were entered into at meetings at which he was present, and at which he took an active part.　He says he did not vote on the question of his own salary.　It is not recorded in the minutes how each trustee voted on that subject, but it does not appear that there was any dissent.　He presided at the meetings when his salary as vice-president and (subsequently) president was fixed, and he must have put to vote on each occasion the resolution by which it was so fixed.　He was thus directly connected with the passage of the resolutions by

which the moneys of the company were voted to him, its agent, and it is impossible to say what influence he may have had or exerted to bring about this result.

It is undoubtedly true that in most of the cases in which courts have set aside contracts of the character involved here, and made by directors with their corporations, the ground of judicial interference has been that the director voted upon the subject of the contract made with himself, and that it has been held that if there were a quorum present without the interested director, and he abstained from voting or taking part, the contract might be upheld. Under such circumstances there are other agents acting exclusively for the corporation, and the interested party has neither voice nor influence in bringing about the result. But here the circumstances surrounding the passage of the resolution by which a salary was to be paid to the defendant, whatever office he held, (it was detached from the vice-presidency when he left that position, and was voted to him as president immediately he was selected to fill that office,) indicate that his interests were to be subserved, rather than those of the corporation; for there was no business to be done by him either as vice-president or president which demanded the devotion of time or the application of special knowledge, ability, or attention to the corporate affairs on his part. The technical and special knowledge was that of the general manager, and the clerical and office work was within the duty of the secretary. The company had neither a factory nor business to be transacted beyond making a few contracts for buildings and machinery during nearly all the time defendant drew his salary. I think, under the facts of this case, it should be held that the resolutions by which the defendant was voted a salary were invalid, and were passed under such circumstances as require the court so to declare at the suit of one entitled to disaffirm them. The general principle which governs in such cases is that referred to by the supreme court of the United States in *Oil Co.* v. *Marbury*, 91 U. S. 587: "That a director of a joint-stock corporation occupies one of those fiduciary relations where his dealings with the subject-matter of his trust or agency, and with the beneficiary or party whose interest is confided to his care, is viewed with jealousy by the courts, and may be set aside on slight grounds, is a doctrine founded on the soundest morality, and which has received the clearest recognition in this court and in others;" citing the authorities. But it is claimed that, even if the contract under the resolutions to pay the defendant a fixed salary for his services must be set aside, the defendant would be entitled to recover on a *quantum meruit* for services rendered as an officer of the corporation, (*Copeland* v. *Manufacturing Co.*, 47 Hun, 237,) and that, as there is testimony to the effect that those services were worth the same sum as that provided for in the resolutions, the plaintiff cannot recover anything. I find nothing in the testimony other than the defendant's own statement, which justifies the conclusion that his services as an officer, apart from those he was bound to render gratuitously as a director, were of any special value. He swears they were worth $2,500 a year, but the court is not bound to accept the statement of an interested party, unsupported by any other testimony, and opposed, as it is here, to the probabilities of the case, (*Elwood* v. *Telegraph Co.*, 45 N. Y. 549; *Gildersleeve* v. *Landon*, 73 N. Y. 609; *Railroad Co.* v. *Strong*, 75 N. Y. 591; *McNulty* v. *Hurd*, 86 N. Y. 547;) and I must decline in this case to be guided by the estimate of value which the defendant puts upon such inconsiderable services as he enumerates on his cross-examination. The plaintiff is entitled to judgment on the first cause of action, with costs.